Verriah V. KOTA, Appellant,

v.

Hal W. LITTLE et al., the Board of Trustees of Pembroke State University, et al., Appellees.

No. 71–2127.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1972.

Decided Jan. 16, 1973.

1

Adam Stein, Charlotte, N. C. (J. Le-Vonne Chambers and Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., on brief), for appellant.

Burley B. Mitchell, Jr., Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen. of N. C., on brief), for appellees.

Before BUTZNER, FIELD and WIDENER, Circuit Judges.

FIELD, Circuit Judge:

Dr. Verriah V. Kota, a nontenured college professor, appeals from an order of the district court, 351 F.Supp. 1059, denying his constitutional protest against the officials of Pembroke State University in North Carolina for their alleged failure to provide procedural due process safeguards prior to nonrenewal of his employment contract.

Dr. Kota was initially employed by Pembroke in the spring of 1965 as professor of mathematics for the 1965–66 academic year, and was re-appointed for each succeeding year through the 1969–70 session. Each year Pembroke required of Dr. Kota that he submit a letter of intent indicating his proposed plans for employment for the following year, and each year a new contract was signed covering the ensuing academic year. In December of 1969 President Jones, acting upon the recommendations of the chairman of the math department and the dean of the university, advised Dr. Kota by letter that his contract of employment would not be renewed at the end of that academic year. Dr. Kota protested the decision and sought specific reasons for the action which the university authorities declined to give. Subsequently, at his own request, Dr. Kota appeared before the Board of Trustees to further object to the decision not to renew his contract, but after his presentation, the Board voted to support the administration's recommendation.

Thereafter, in May of 1970, Dr. Kota instituted this action in the district court. Suing under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction invoked pursuant to 28 U.S.C. § 1343(3), (4), plaintiff sought declaratory and injunctive relief, back pay, attorney's fees and costs. In his original complaint Dr. Kota charged that the university's refusal to grant him tenure as well as the nonrenewal of his contract were racially motivated, and further alleged that the absence of a meaningful hearing prior to termination [1] denied him due process.[2] The complaint was later amended to include the allegation that tenure was wrongfully withheld under the established tenure policy of Pembroke as prescribed in the Faculty Handbook in violation of the terms of Kota's contract and the Fourteenth Amendment. At trial Dr. Kota abandoned his allegation that the actions of the university were in any manner racially motivated and, in fact, the district court noted that no evidence was introduced which disclosed any consideration of race or national origin in the administrative determinations. Thus the sole issue was whether the defendants violated procedural due process in failing to renew Dr. Kota's contract of employment.

The district court, after a full hearing on the merits, concluded that Dr. Kota was a nontenured professor, and that tenure was not wrongfully withheld.[3] The court further found that the

---

1. In the pleadings and briefs counsel for plaintiff characterize the defendants' action as a "termination" of Kota's employment. In fact, the Board did not terminate Kota's employment but rather declined to renew his employment contract beyond the 1969–70 academic year.

2. The complaint contains a rather cryptic charge of infringement of the plaintiff's First Amendment rights. However, this charge is not supported by either factual allegations or the evidence.

3. The district court's opinion appears in 351 F.Supp. 1059. It is clear from the

administration's decision of nonrenewal was not influenced by any constitutionally impermissible factors and, thus, there was no denial of due process. While the court's decision antedated Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its companion case, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the law applied by the district judge comports with the principles enunciated in those decisions. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Roth, supra, 408 U.S. at 569, 92 S.Ct. at 2705. The district court concluded, and we agree, that nothing in the conduct or policies of the Pembroke authorities created any obligation of an expectation of employment.[4] While the "absence of such an explicit contractual provision [tenure] may not always foreclose the possibility that a teacher has a 'property' interest in re-employment," Sindermann, supra, 408 U.S. at 601, 92 S.Ct. at 2699, a mere subjective expectancy on the part of a teacher is not a property interest within the meaning of the Fourteenth Amendment.

Similarly, it is clear that there was no deprivation of Kota's "liberty" as a result of the Board's action. "To sufficiently state a constitutional claim of denial of 'liberty,' a nontenured teacher whose contract has not been renewed must plead either that his 'good name, reputation, honor or integrity' has been damaged by, in addition to the nonrenewal, the assignment of reasons for the nonrenewal, or he must plead that the State has imposed on him some 'stigma' or 'other disability,' in addition to the nonrenewal, which foreclosed his freedom to take advantage of other employment opportunities." Johnson v. Fraley, 470 F.2d 179 (4 Cir. 1972) (Boreman, J., concurring specially). Dr. Kota has demonstrated no action on the part of the defendants which might harm his reputation or interfere with the pursuit of his career except the nonrenewal itself.[5]

On appeal, Dr. Kota raises the additional contention that the administration gratuitously afforded him a hearing before the Board of Trustees and, accordingly, was required to follow minimum due process standards, basing this assertion on his reading of our recent decision in Horton v. Orange County Board of Education, 464 F.2d 536 (4 Cir. 1972). We do not think that the courtesy extended to Dr. Kota by the members of the Board in permitting him to appear before them to state his objections to the administrative action could in any sense be characterized as a hearing within the meaning of the Horton opinion. In any event, Horton recognizes the futility of remanding to the Board for a hearing once, as in the instant case, the district judge has found that evidence of misconduct warranted discharge.[6] Upon the

---

district court's findings that Dr. Kota was denied tenure for the reasons, among others, that he failed to provide transcripts of his academic degrees and the university's subsequent discovery that the thesis for his Ph.D. was written in the field of chemistry rather than mathematics.

4. The university policy and procedure foreclosed Kota's claim of entitlement to re-employment. The dean of the university by deposition testified that under the custom and practice of the university it was only in rare cases that tenure was granted immediately after a professor became eligible. President Jones stated that other professors with at least as many

years of service at Pembroke as Dr. Kota had not been granted tenure.

5. After his nonretention by Pembroke, Dr. Kota accepted employment at Morris College in Sumter, South Carolina.

6. As previously noted, ample evidence was introduced to support the administration's action to withhold tenure. With respect to dismissal, the district court found that Dr. Kota had physically assaulted the chairman of his department and publicly questioned the intellectual ability and competence of the President. Such incidents are disruptive to the normal functioning of a university and clearly justify a decision not to renew.

**4**

record before us it is manifestly clear that Pembroke's decision of nonrenewal was not arbitrary or capricious but rested upon a sound basis in fact. Under no interpretation of procedural due process should a party be entitled to a second hearing after having had his "day in court" with all reasonable constitutional protections.

Affirmed.