WHEELER ET AL. v. MONTGOMERY, DIRECTOR,
DEPARTMENT OF SOCIAL WELFARE OF
CALIFORNIA, ET AL.

No. 14. Argued October 13, 1969—Decided March 23, 1970

*Peter E. Sitkin* argued the cause for appellants. With him on the briefs were *Steven J. Antler* and *Charles Stephen Ralston.*

*Elizabeth Palmer,* Deputy Attorney General of California, argued the cause for appellees. With her on the brief were *Thomas C. Lynch,* Attorney General, *Richard L. Mayers,* Deputy Attorney General, *Thomas M. O'Connor,* and *Raymond D. Williamson, Jr.*

*Solicitor General Griswold, Assistant Attorney General Ruckelshaus,* and *Robert V. Zener* filed a brief for the United States as *amicus curiae* urging affirmance. *Thomas L. Fike* filed a brief for the Legal Aid Society of Alameda County as *amicus curiae.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This is a companion case to No. 62, *Goldberg* v. *Kelly, ante,* p. 254. It is a class action brought by all recipients

of old age benefits who are subject to California welfare termination provisions. A three-judge District Court for the Northern District of California held that the California procedure for pre-termination review in welfare cases satisfies the requirements of the Due Process Clause, 296 F. Supp. 138 (1968), and we noted probable jurisdiction, 394 U. S. 970 (1969). This procedure requires notice to the recipient of the proposed discontinuance or suspension at least three days prior to its effective date, together with reasons for the intended action and a statement of what information or action is required to re-establish eligibility, advice that the recipient may meet his caseworker before his benefits are terminated "[t]o discuss the entire matter informally for purposes of clarification and, where possible, resolution," and assurance that there will be "prompt investigation" of the case and restoration of payments "as soon as there is eligibility" to receive them.* The procedure does not, how-

---

*California State Department of Social Welfare, Public Social Services Manual, Reg. 44–325 (effective April 1, 1968). The pertinent provisions of the regulation state:

".43 . . . The recipient . . . shall be notified, in writing, immediately upon the initial decision being made to withhold a warrant beyond its usual delivery date . . . and in no case less than three . . . mail delivery days prior to the usual delivery date of the warrant . . . . The county shall give such notice as it has reason to believe will be effective including, if necessary, a home call by appropriate personnel. . . . Every notification shall include:

".431 A statement setting forth the proposed action and the grounds therefor, together with what information, if any, is needed or action required to reestablish eligibility . . . .

".432 Assurance that prompt investigation is being made; that the withheld warrant will be delivered as soon as there is eligibility to receive it; and that the evidence or other information which brought about the withholding action will be freely discussed with the recipient . . . if he so desires . . . .

.          .          .          .          .

".434 A statement that the recipient . . . may have the opportunity to meet with his caseworker . . . in the county department, at

ever, afford the recipient an evidentiary hearing at which he may personally appear to offer oral evidence and confront and cross-examine the witnesses against him. In *Goldberg* v. *Kelly, supra,* decided today, we held that procedural due process requires such an evidentiary pretermination hearing before welfare payments may be discontinued or suspended. Accordingly, the judgment of the District Court must be and is reversed on the authority of *Goldberg* v. *Kelly.*

*Reversed.*

MR. JUSTICE BLACK, for the reasons set forth in his dissenting opinion in No. 62, *Goldberg* v. *Kelly, ante,* p. 271, dissents and would affirm the judgment below.

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE BLACK joins, dissenting.*

Although I agree in large part with MR. JUSTICE BLACK's views in No. 62, *Goldberg* v. *Kelly, ante,* p. 271, there are additional factors I wish to mention in dissent from today's unwise and precipitous constitutional holdings.

The procedures for review of administrative action in the "welfare" area are in a relatively early stage of development; HEW has already taken the initiative by promulgating regulations requiring that AFDC pay-

---

a specified time, or during a given time period which shall not exceed three . . . working days, and the last day of which shall be at least one . . . day prior to the usual delivery date of the warrant, and at a place specifically designated in order to enable the recipient . . .

"(a) To learn the nature and extent of the information on which the withholding action is based;

"(b) To provide any explanation or information, including, but not limited to that described in the notification . . . ;

"(c) To discuss the entire matter informally for purposes of clarification and, where possible, resolution."

*[This opinion applies also to No. 62, *Goldberg* v. *Kelly, ante,* p. 254.]

ments be continued until a final decision after a "fair hearing" is held.[1] The net effect would be to provide a hearing prior to a termination of benefits. Indeed, the HEW administrative regulations go far beyond the result reached today since they require that recipients be given the right to appointed counsel,[2] a position expressly rejected by the majority. As the majority notes, see _ante,_ at 257 n. 3, these regulations are scheduled to take effect in July 1970. Against this background I am baffled as to why we should engage in "legislating" via constitutional fiat when an apparently reasonable result has been accomplished administratively.

That HEW has already adopted such regulations suggests to me that we ought to hold the heavy hand of constitutional adjudication and allow evolutionary processes at various administrative levels to develop, given their flexibility to make adjustments in procedure without long delays. This would permit orderly development of procedural solutions, aided as they would be by expert guidance available within federal agencies which have an overview of the entire problem in the 50 States. I cannot accept—indeed I reject—any notion that a government which pays out billions of dollars to nearly nine million welfare recipients is heartless, insensitive, or indifferent to the legitimate needs of the poor.

The Court's action today seems another manifestation of the now familiar constitutionalizing syndrome: once some presumed flaw is observed, the Court then eagerly accepts the invitation to find a constitutionally "rooted" remedy. If no provision is explicit on the point, it is then seen as "implicit" or commanded by the vague and nebulous concept of "fairness."

---

[1] 45 CFR § 205.10, 34 Fed. Reg. 1144 (1969).

[2] 45 CFR § 220.25, 34 Fed. Reg. 1356 (1969). See also HEW Handbook, pt. IV, §§ 2300 (d) (5), 6200–6400.

I can share the impatience of all who seek instant solutions; there is a great temptation in this area to frame remedies that seem fair and can be mandated forthwith as against administrative or congressional action that calls for careful and extended study. That is thought too slow. But, however cumbersome or glacial, this is the procedure the Constitution contemplated.

I would not suggest that the procedures of administering the Nation's complex welfare programs are beyond the reach of courts, but I would wait until more is known about the problems before fashioning solutions in the rigidity of a constitutional holding.

By allowing the administrators to deal with these problems we leave room for adjustments if, for example, it is found that a particular hearing process is too costly. The history of the complexity of the administrative process followed by judicial review as we have seen it for the past 30 years should suggest the possibility that new layers of procedural protection may become an intolerable drain on the very funds earmarked for food, clothing, and other living essentials.[3]

Aside from the administrative morass that today's decision could well create, the Court should also be cognizant of the legal precedent it may be setting. The majority holding raises intriguing possibilities concerning the right to a hearing at other stages in the welfare process which affect the total sum of assistance, even though the action taken might fall short of complete termination. For example, does the Court's holding

---

[3] We are told, for example, that Los Angeles County alone employs 12,500 welfare workers to process grants to 500,000 people under various welfare programs. The record does not reveal how many more employees will be required to give this newly discovered "due process" to every welfare recipient whose payments are terminated for fraud or other factors of ineligibility or those whose initial applications are denied.

embrace welfare reductions or denial of increases as opposed to terminations, or decisions concerning initial applications or requests for special assistance? The Court supplies no distinguishable considerations and leaves these crucial questions unanswered.

MR. JUSTICE STEWART, dissenting.*

Although the question is for me a close one, I do not believe that the procedures that New York and California now follow in terminating welfare payments are violative of the United States Constitution. See *Cafeteria & Restaurant Workers Union* v. *McElroy*, 367 U. S. 886, 894–897.

---

*[This opinion applies also to No. 62, *Goldberg* v. *Kelly*, *ante*, p. 254.]