Radie P. **WRIGHT** and **Clara Little Wright**, on their own behalf and as next of friend to their infant child **Clarence Edward**, and on behalf of all others similarly situated, Plaintiffs,

v.

Robert **H. FINCH**, individually and in his capacity as Secretary of Health, Education, and Welfare, Defendant.

**Civ. A. No. 1457-70.**

United States District Court, District of Columbia.

Jan. 6, 1971.

**384**

Leona Yurdin, E. Calvin Golumbic, and Edward E. Schwab, Washington, D. C., for plaintiffs.

Thomas A. Flannery, Joseph M. Hannon, and Lawrence S. Margolis, Washington, D. C., for defendant. Paul Merlin, Washington, D. C., of counsel.

Before ROBB, Circuit Judge, MATTHEWS, Senior District Judge, and GASCH, District Judge.

GASCH, District Judge:

This class action [1] was initiated by plaintiff Radie Wright in behalf of all recipients of disability insurance benefits under Title II of the Social Security Act.[2] Radie Wright suffers from chronic gastritis, cirrhosis of the liver, hepatic decompensation, arthritis and a heart condition. He was advised by his doctors that he could no longer work as a laborer because of his condition and his application for disability payments was approved by the Social Security Administration in May, 1966. Since that time he has drawn various amounts for his support and the support of his wife and two sons; his current payments are $126.70 per month for his own support plus smaller amounts for the support of his sons. In 1968, while still drawing benefit payments, he returned to work and earned $343.32; he continued to work in 1969 and earned $4,098.49. He has not worked since December, 1969. The Administration checks earnings postings against the rolls of disability beneficiaries. This check revealed that Radie Wright had been employed. Following additional field investigation, including verification of the earnings with the employers and an interview with plaintiff, the Administration determined that because he had demonstrated ability to engage in substantial gainful activity that Radie Wright might no longer be eligible for disability payments. He was notified by letter on April 14, 1970, that his payments were being suspended as

---

1. The situation presented here meets the criterion of a class action maintainable under Rule 23(b) (2), Fed.R.Civ.P.

2. 42 U.S.C. § 401 *et seq.* (1964).

of that time pending further investigation his eligibility.[3]

Intervenor-plaintiff, John D. Atkins, Jr., is currently a psychiatric patient of the Veterans Administration Hospital in Salem, Virginia. He has been under psychiatric care since December, 1966, and was found eligible for disability benefits by the Administration in July, 1967. He was informed by letter on February 3, 1970, that it had been determined that his disability had ceased as of January, 1970, apparently on the basis of an examination of the recipient and his medical records conducted by a doctor for the Social Security Administration in January, 1970. His benefits were to be terminated after the March, 1970, payment. This decision was subsequently reconsidered and Atkins was reinstated by the Administration. He is still subject to the suspension provisions of the Act.

Plaintiffs contend that section 225 of the Act[4] is unconstitutional in that it deprives them of property without due process of law.[5] That section of the Act provides:

If the Secretary, on the basis of information obtained by or submitted to him, believes that an individual entitled to [disability] benefits * * * may have ceased to be under a disability, the Secretary may suspend the payment of benefits * * * until it is determined * * * whether or not such individual's disability has ceased or until the Secretary believes that such disability has not ceased.

In its recent decision in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that an evidentiary hearing was required prior to terminating welfare benefits under Title IV of the Act. The challenged section quoted above must similarly be held constitutionally deficient in that disability payments may be suspended without prior proceedings in which the recipient may participate.

I.

In *Goldberg* and the companion case of Wheeler v. Montgomery,[6] the Supreme Court has declared that benefits received under Title I (Old Age Assistance) and Title IV (Aid to Families with Dependent Children) of the Social Security Act are a matter of statutory entitlement for persons qualified to receive them.[7] Therefore, suspension or termination of these benefits are subject to the requirements of procedural due process. There is no significant difference between entitlement to those benefits and benefits under Title II (Old Age, Survivors and Disability Insurance Benefits).[8] It follows that disability beneficiaries must be accorded procedural due process in suspension and termination proceedings.[9]

---

3. The notice given plaintiff was a form notice which explained that his benefit payments had been stopped because "your trial work period expired."

4. 42 U.S.C. § 425.

5. Since plaintiffs seek an injunction restraining the enforcement of an act of Congress due to an alleged constitutional defect, a three-judge court was convened pursuant to 28 U.S.C. §§ 2282, 2284 (1964).

6. 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed. 2d 307 (1970).

7. 397 U.S. 262, 90 S.Ct. 1011.

8. Eligibility for Title I and Title IV benefits is based on the need of the recipient whereas Title II benefits are paid to individuals who are insured under the Act and meet the age or disability requirements. 42 U.S.C. §§ 402, 423 (1964). This distinction is not significant in determining the procedural rights of the recipient. *See* text accompanying note 12, *infra.*

9. *See* Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). "The interest of a covered employee under the [Social Security] Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause." *Id.*, at 611, 80 S.Ct., at 1373.

## II.

■ The exact procedures demanded by due process are determined by the circumstances of the particular situation. The determination of the appropriateness of the procedures requires balancing the governmental function involved against the private interest affected.[10] The Court stated the test in *Goldberg:* "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." [11] In *Goldberg,* the crucial factor was that "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." [12] This factor may not be as great in the case of a disability beneficiary as it is in the welfare recipient's situation. Disability beneficiaries are not, as are welfare recipients, dependent by definition on benefit payments for their livelihood. But a disability beneficiary is by definition unable to engage in substantial gainful activity and he would, therefore, be liable to sustain grievous loss while awaiting the resolution of his claim.

■ The countervailing governmental interests raised in support of the summary procedures are the protection of the Federal Disability Trust Fund from depletion due to payments to ineligible recipients pending determination of their status and the administrative expense involved in providing pre-termination review. These fiscal and administrative expenses to the government, whatever their magnitude, are insufficient justification considering the crippling blow that could be dealt to an individual in these circumstances. It is precisely this type of balance which led the *Goldberg* Court to require pre-termination review.

■ The ex-parte suspension power granted to the Secretary by section 225 is summary adjudication that is inconsistent with the requirements of due process. A disability beneficiary must be given adequate notice and an opportunity to participate in the determination proceedings prior to the suspension of benefits.

## III.

■ The Supreme Court concluded that a "fair hearing" for welfare recipients must include timely and adequate notice, an opportunity for the recipient to present his case orally and the right to confront and cross-examine adverse witnesses. In determining the type of hearing necessary, the Court relied on its previous holding in Greene v. McElroy.[13]

Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact finding, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, *it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurors or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.* We have formalized these protections

10. *See, e. g.*, Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

11. 397 U.S. 262–263, 90 S.Ct. 1017–1018 (citations omitted).

12. *Id.*, at 264, 90 S.Ct., at 1018.

13. 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed. 2d 1377 (1957).

in the requirements of confrontation and cross-examination.[14]

The evidentiary basis for the determination of eligibility for welfare benefits which was considered by the Court in *Goldberg* in delineating the form of hearing required in that case differs from the situation presented here. The regulations [15] of the Social Security Administration provide that disability benefits can be terminated when medical or other evidence indicates that the impairment has ceased or when the individual has engaged in substantial gainful employment. The evidence to support these findings consists of medical reports and certification by employers that the individual has been employed by them.[16] If timely notice is given the recipient specifying the grounds for his proposed suspension and he is given reasonable opportunity to examine the documentary evidence supporting the action, there would be no necessity to hold a formal hearing where the medical personnel or the employers would have to be made available for cross-examination.

The affected recipient should of course be given the opportunity to respond and submit evidence supporting his claim. The resolution of conflicting evidence at this point should be made by an impartial decision maker.[17] If the recipient has submitted some evidence that contradicts that possessed by the Administration, a hearing could be held to resolve those issues. The Social Security Administration should have an opportunity to develop presuspension proceedings [18] which afford fundamental due process to the recipient before this Court rules on the adequacy of the details of that procedure.[19]

I am authorized to state that Circuit Judge ROBB concurs in this opinion.

MATTHEWS, Senior District Judge (concurring and dissenting in part):

I concur in large part in the opinion. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). In *Goldberg* the Supreme Court held that a wel-

---

14. *Id.*, at 496, 79 S.Ct., at 1413 (emphasis added).

15. 20 C.F.R. § 404.1539.

16. The Bureau of Data Processing and Accounts of the Social Security Administration which maintains earnings records of all individuals covered under the Act, checks earnings posted against the rolls of disability beneficiaries. The Administration's Claims Manual instructs field personnel to contact employers for whom the disability beneficiary has worked while receiving benefits. Further, section 6708 of the Manual states that "benefits should not be suspended based solely on a report from an informant."

17. The investigating officer who has compiled the record on which the decision is to be based should not make the final decision.

18. The Secretary has formulated procedures for determining and reviewing rights with respect to the establishment and continuance of a period of disability. 20 C.F.R. Part 404, subpart J. These review procedures only become applicable after the administrative decision that the disability has ceased, 20 C.F.R. § 404.-905(d), but could form a basis for the

presuspension proceedings which this decision requires. These regulations require that when an initial determination is made that the party to whom the determination applies be notified of the determination, of the basis of the determination, and informed of his right to request reconsideration. 20 C.F.R. § 404.-907. The party may submit additional material for the purposes of the reconsideration. After initial determination and reconsideration, the individual has a right to a hearing before an impartial hearing examiner. 20 C.F.R. § 404.916. These regulations do not now apply to actions under 42 U.S.C. § 425, since suspension of benefits pending an investigation of continued eligibility is not an initial determination under the regulations. 20 C.F.R. § 404.906.

19. The Supreme Court in *Goldberg* recognized "the importance of not imposing upon the * * * Government * * * any procedural requirements beyond those demanded by rudimentary due process." 397 U.S. at 267, 90 S.Ct. at 1020. *See also* the dissenting opinion of Mr. Chief Justice Burger in Wheeler v. Montgomery, 397 U.S. 282, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970).

fare recipient, in addition to timely and adequate notice detailing the reasons for a proposed termination of benefits, must have "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." Page 268, 90 S.Ct. page 1020. I respectfully dissent from so much of the opinion as seems to suggest that the procedural requirements of due process may be satisfied with something less than the "opportunity" specified in *Goldberg*.