Aldine ROCHESTER, individually and on behalf of her minor child, Rose Gibson, individually and on behalf of her seven minor children, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Albert L. INGRAM, Jr., Secretary of Health and Social Services and John Hiland, Director of Social Services, Defendants.

Civ. A. No. 4265.

United States District Court,
D. Delaware.

Jan. 14, 1972.

## OPINION

STEEL, District Judge.

Plaintiffs are eligible for public assistance under the Aid to Families with Dependent Children Program (AFDC). This program was established by the Social Security Act of 1935, 42 U.S.C. § 601 et seq., and has been adopted in Delaware. 31 Del.C. § 321 et seq. The defendants are Albert L. Ingram, Jr., Secretary of the Delaware Department of Health and Social Services, 31 Del.C. § 109, who has management and supervisory responsibilities of that Department, and John Hiland, the Director of the Division of Social Services in Delaware. On October 27, 1971, as a result of conferences among defendants and Governor Peterson, it was determined that public assistance payments under AFDC to plaintiffs and other members of the class on whose behalf the action has been brought[1] should be reduced by 11.7 per cent, effective November 1, 1971, below the amounts theretofore paid to them under the same conditions of eligibility.

This suit was brought under the Civil Rights Act, 42 U.S.C. § 1983, and attacks the legality of the reducing action as having been taken without providing plaintiffs with notice as allegedly required by the Federal Regulations, State Public Assistance Manual and the Due Process clause of the Fourteenth Amendment of the United States Constitution. Jurisdiction exists both under 28 U.S.C. § 1343 and pendent jurisdiction. Rosado v. Wyman, 397 U.S. 397, 402–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

The case is before the Court upon the motion of plaintiffs, filed November 12, 1971, for a preliminary injunction directing defendants to issue supplemental checks to compensate plaintiffs for the 11.7 per cent reduction in November.[2] The motion alleges that by reason of the regulatory and constitutional violations

John S. Grady, Wilmington, Del., for plaintiffs.

Kent Walker, Deputy Atty. Gen., Wilmington, Del., for defendants.

1. An order was entered on November 30, 1971 which permitted plaintiffs to maintain the suit as a class action.

2. Plaintiffs' motion for a temporary restraining order was heard and denied orally on November 4, 1971, the date when the complaint was filed. An order of denial was dated November 8, 1971.

plaintiffs and members of their class have suffered and will continue to suffer irreparable harm until they are paid the amounts by which their public assistance checks have been reduced by reason of the defendants' action. The motion is before the Court upon the verified complaint, unverified answer, affidavits, and deposition of A. Roke Lieberman, Assistant Director of Payments of the Delaware Division of Social Services, and has been briefed and argued.

In Bowers v. Columbia General Corporation, 336 F.Supp. 609 (D.Del.1971), Judge Stapleton identified the criteria relevant to the issuance of a preliminary injunction as follows:

> When an application for a preliminary injunction is made, the moving party has the burden of showing that he is entitled to the relief sought based upon the following criteria: "(1) irreparable harm to . . . [the moving party], absent such stay; (2) absence of substantial harm to other interested parties; (3) absence of harm to the public interest; (4) a likelihood that . . . [the moving party] prevail on the merits." Winkleman v. New York Stock Exchange, 445 F.2d 786 (3rd Cir. 1971); Nelson v. Miller, 373 F.2d 474 (3rd Cir. 1967); Babcock v. Local Board No. 5, 321 F.Supp. 1017 (D.Del.1970).[3]

The nature of the AFDC program is described in King v. Smith, 392 U.S. 309, at pages 313, 316–317, 88 S.Ct. 2128, at pages 2131, 2133, 20 L.Ed.2d 1118 (1968) as follows:

> "The AFDC program is one of three major categorical public assistance programs established by the Social Security Act of 1935. . . . The category singled out for welfare assistance by AFDC is the "dependent child," who is defined in § 406 of the Act, 49 Stat. 629, as amended, 42 U.S.C. § 606 (a) (1964 ed., Supp. II), as an age-qualified "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with" any one of several listed relatives.

\*   \*   \*   \*   \*   \*

The AFDC program is based on a scheme of cooperative federalism. See generally Advisory Commission Report, supra, at 1–59. It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education and Welfare (HEW). 49 Stat. 627 [(1935)], 42 U.S.C. §§ 601, 602, 603 and 604. See Advisory Commission Report, supra, at 21–23. The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW. 49 Stat. 627, as amended, 42 U.S.C. § 602 (1964 ed., Supp. II). See also HEW, Handbook of Public Assistance Administration, pt. IV, §§ 2200, 2300 (hereafter cited as Handbook)."

The following facts are undisputed:

There has been established by the State Treasurer, acting pursuant to 31 Del.C. § 121 (Supp.1968) a Public Welfare Fund and within that fund a separate account for the AFDC public assistance program. The Delaware General Assembly has appropriated $4,150,000 to the account for the "fiscal year July 1, 1971 ending June 30, 1972". 58 Del.Laws, Ch. 182 § 1, pp. 1, 16, approved July 1, 1971. This sum, less $100,000 transferred with the approval of the Director of the Budget to an AFDC training program, is the only money appropriated available for AFDC benefits. This appropriation was made without specifying the percentage of the standard of need at which recipients were to be paid. As a result, the Department of Health and

---

3. Judge Stapleton added a footnote which is not presently relevant.

Social Services of Delaware determined, solely on the basis of the amount of funds available, to pay benefits for the months of July, August, September and October 1971 at 60 per cent of the standard of need.

At 60 per cent level of need, $2,192,022 were paid in AFDC benefits during the first third of the fiscal year. This was 54.1 per cent of the total amount of $4,-150,000 appropriated for the entire fiscal year.

The level of benefits was therefore reduced, effective November 1971, from 60 to 53 per cent, or approximately 11.7 per cent. The reduction applied to all AFDC recipients in equal degree. Although there were, as there are every month, other adjustments made in individual cases where a change of eligibility had occurred, the 11.7 per cent adjustment was totally unrelated to eligibility for benefits.

On October 27, 1971 notices were sent to plaintiffs and members of their class by the defendant Hiland which read:

" STATE OF DELAWARE

DEPARTMENT OF HEALTH AND SOCIAL SERVICES DIVISION OF SOCIAL SERVICES

October 27, 1971

The Division of Social Services must adjust your assistance grant effective November 1971. This grant adjustment is a policy change necessitated by the limitation of available funds and to correct an error made in September. You have the right to appeal and have a Fair Hearing; you may be represented by legal counsel or anyone of your choice; you have a right to an informal conference with our Division which in no way affects your right to a formal hearing. Contact your worker if you wish to appeal.

John E. Hiland, Jr.<br>Director　　　　"

This notice was received by plaintiffs on October 29, 1971.

On November 6, 1971 plaintiffs received their public assistance checks for the month of November which reflected the 11.7 per cent reduction.

The Federal Regulation entitled "Fair Hearings" provides in part, 45 C.F.R. § 205.10(a) (5): [4]

(5) In cases of any proposed action to terminate, suspend or reduce assistance:

(i) The State or local agency will give timely and adequate advance notice detailing the reasons for the proposed action, Under this requirement:

(a) "Timely" means that the notice is mailed at least 15 days before the action is to be taken.

(b) "Adequate advance notice" means a written notice that includes details of reasons for the proposed agency action, explanation of the individual's right to conference, his right to request a fair hearing and the circumstances under which assistance is continued if a fair hearing is requested.

If section 205.10(a) (5) has application to the 11.7 per cent reduction, obviously it was not complied with. The notice was not given 15 days before action was taken, and in content the notice was defective since it failed to state the circumstances under which assistance would be continued if a fair hearing were requested. Defendants, however, deny the applicability of the regulation to the present reduction.

The purpose of the 15 days notice requirement of the regulation is to enable a welfare recipient to seek an informal agency conference to show, among other things, that "the proposed action is incorrect", section 205.10(a) (5), (ii), and if satisfaction is not obtained, then to request a "fair hearing" within the advance notice period, section 205.10(a) (5), (iii) (a).[5] The regulation discloses,

---

4. A copy of Regulation 205.10 is an appendix to this opinion.

5. The notice period had previously been 7 days. The reason for increasing the

at least by implication, that an AFDC recipient is entitled to a hearing only when the reduction is due to "state agency policy" or is "one of fact or judgment relating to the individual case." See section 205.10(a) (5), (iii) (a) (1).

Plaintiffs do not challenge the reduction because of a question of fact or judgment relating to their particular cases. Nor was the reduction made as a result of "state agency policy" within the meaning of section 205.10.

The meaning of "state agency policy" is illuminated by the release of the Federal Social and Rehabilitation Service dated February 13, 1971, which was issued simultaneously with the publication of section 205.10 in the Federal Register of February 13, 1971, Vol. 36, No. 31 at pp. 30–34 et seq. This release set forth the "main reasons" why a hearing at the state level was retained. It said:

5. The State agency should be better able to interpret State policy and to determine whether they were correctly applied to the individual's situation, especially when the claimant challenges the correctness of the local agency application of those policies.

■■ This interpretation of section 205.10 by the service which promulgated it is entitled to substantial weight and is accepted. So interpreted, it requires an administrative hearing on "state agency policy" only when (1) the policy needs interpretation, or (2) its application to an individual case is challenged. Plaintiffs' suit presents neither of these situations.

Another approach supports the conclusion that the reduction was not within the ambit of the hearing and related notice provisions of section 205.10. The distinction is crucial between Federal agency policy relating exclusively to the

AFDC program and State budgetary policy which only indirectly although importantly affects it. It cannot be presumed that the Federal government intended the latter to be a matter of its regulatory concern.

The $4,150,000 appropriated by the Legislature, effective July 1, 1971, was for "the fiscal year ending June 30, 1972". 58 Del.Laws, Ch. 182. Needs of the counties under the program were to be financed on an "equal sharing" basis with the state; and the county appropriation for the program was also "for each fiscal year". 31 Del.C. § 513(b) (Supp.1968). The "matching fund" appropriation authorized by Congress was likewise "for each fiscal year". 42 U.S.C. § 601 (ed. 1969).

Under Delaware law, an agency is prohibited from withdrawing from the treasury any amount in excess of that appropriated by the General Assembly, 29 Del.C. § 6506 (ed. 1953). The budget director is mandated to exercise, subject to the approval of the Governor, such control over monthly and/or quarterly rates of agency expenditures as he may deem necessary "to assure the effective and continuous operation of the various agencies during the fiscal year". 29 Del. C. § 6529 (Supp.1970).

The action of defendants in reducing the AFDC payments was wisely taken to carry out their fiscal responsibility demanded of them by State law. Their action did nothing more than reduce the "level of benefits" with relationship to the "standard of need" of participants as predetermined by the State. In King v. Smith, 392 U.S. 309, 318–319, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118 (1968) the Court said:

There is no question that States have considerable latitude in allocating their AFDC resources, since each State is

---

minimum to 15 days is explained in a publication of the Social and Rehabilitation Service of the HEW dated February 13, 1971 which states:

"We have increased the minimum time period from 7 days to 15 days. A seven-day period would not permit an

individual to seek an informal conference, consult others, and request a hearing before the end of the notice period, i. e., before the agency takes action to discontinue, suspend, or reduce assistance."

free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.[6]

■ This decision ante-dated the promulgation of section 205.10. It is not reasonable to suppose that the drafters of section 205.10 intended that the hearing and related notice provisions should restrict the State from reducing the "level of benefits" when the purpose was to reapportion limited State monies to assure assistance to recipients throughout the entire fiscal year, especially in view of the Supreme Court's statement in King v. Smith. Since the regulations were not intended to require a hearing with regard to such State action neither was it intended to mandate the giving of advance notice.

Plaintiffs point out that the Delaware Public Assistance Manual provides in section 5410.2:

> "In *no instance* may a grant be suspended, reduced, or terminated without advance notice of action being issued to the client. If information is received, *near or by*, authorization deadline date for change, that will result in suspension, reduction or termination, no action can be taken until the client is issued the fifteen days prior notice of action, Form 43." (emphasis in Manual)

This provision on its face makes mandatory fifteen days notice prior to a proposed reduction in AFDC payments. This and the related sections of the Manual parallel section 205.10 of the Federal Regulations. In both, notice is exclusively related to the fair hearing procedure. The Manual, therefore, should receive an interpretation identical to the Federal Regulations. So construed the provision of the Manual for notice has no present relevance.

■ Although neither Federal nor State regulations required defendants to give plaintiffs any advance notice of the reduction, the question remains whether due process demanded it. In asserting that it did, plaintiffs rely primarily upon Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). Both held that a State cannot, consistent with due process, terminate public assistance payments to a particular participant based upon his individual eligibility without affording him advance notice and a prior evidentiary hearing.[7]

The notice and fair hearing requirement of *Goldberg* and *Wheeler* has no application where a reduction of payments is effected not because of the individual circumstance of a particular recipient but as a result of statewide welfare policy which impartially affects all welfare recipients alike. Provost v. Betit, 326 F.Supp. 920 (D.Vt.1971). In *Provost* the Court held that as a matter of due process it was constitutionally permissible for the Vermont Department of Social Welfare to put into effect in a social welfare program a statewide policy which had the over-all effect of increasing the benefits of some recipients and reducing those of others without first affording the latter a pre-reduction hearing. In the course of its opinion the Court said at p. 924:

> "In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491

6. In Rosado v. Wyman, *supra*, the Court defined "level of benefits" and "standard of need" 397 U.S. at p. 408, 90 S.Ct. at p. 1216, 25 L.Ed.2d 442 as follows:
"There are two basic factors that enter into the determination of what AFDC benefits will be paid. First, it is necessary to establish a 'standard of need,' a yardstick for measuring who is eligible for public assistance. Second, it must be decided how much as-

sistance will be given, that is, what 'level of benefits' will be paid."

7. Whether such a hearing is required where there has been a *reduction* in aid, as here, as distinct from *termination* of aid which was dealt with in Goldberg v. Kelly, is still an open question in the United States Supreme Court. Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970).

(1970), the Supreme Court citing Goldberg v. Kelly, *supra*, noted that

> [t]he Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. 397 U.S. at 487, 90 S.Ct. at 1163 (citations omitted)."

Admittedly, Provost v. Betit is on its face limited to a pre-reduction hearing. The constitutional principle which it expresses, however, has equal force to a post-reduction hearing where, as here, authorized administrative action needs no interpretation and no question exists as to its application to particular recipients. In these circumstances no case cited by plaintiffs suggests that the failure to give notice as a prelude to a hearing—pre-reduction or post-reduction—is lacking in due process.

In Merriweather v. Burson, 325 F. Supp. 709 (N.D.Ga.1970), the Court held that Goldberg v. Kelly required notice and the holding of an administrative hearing only when the rights of welfare recipients depended upon the resolution of factual controversies and not:

> "where across-the-board cuts in funding necessitate wholesale reductions in benefits or changes in other programs such as social security benefits result in "automatic" reductions or terminations. . . ." (p. 711)

The injunction which issued in *Merriweather* prohibited a termination or reduction of public assistance without a reasonable notice and opportunity to be heard which met due process standards only

> "where the proposed termination is based upon factual determinations relating to the eligibility of the particular recipient for those benefits." (p. 711)

This decision was affirmed insofar as it related to the termination of benefits but was remanded to further consider whether the due process requirement of Goldberg v. Kelly, involving as it did a termination of benefits, was in principle also applicable to a case involving reduction of benefits. Merriweather v. Burson, 439 F.2d 1092 (5th Cir. 1971). See Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970).

The memorandum opinion of the District Court for the Northern District of California in Wheeler v. Montgomery, No. 48303 dated October 28, 1971, attached to plaintiffs' appendix is not at variance with Provost v. Betit or Merriweather v. Burson. The factual background of the decision is not too clear. However, it followed the reversal by the Supreme Court in Wheeler v. Montgomery, *supra*, of the District Court's earlier decision in 296 F.Supp. 138 (N.D.Cal. 1968). The Supreme Court opinion discloses that the case involved the individual eligibility of the program beneficiaries. This is emphasized not only by the language of the opinion itself, 397 U.S. at 281, 90 S.Ct. 1026, 25 L.Ed.2d 307, but also by the Court's reliance upon the companion case of Goldberg v. Kelly. Furthermore, in footnote 2 of the opinion of October 28, 1971, the advance notice and an opportunity to be heard in the case of a reduction occasioned by "a change in State law of general application" was stated to be constitutionally necessary if a recipient wishes to present "a factual question regarding the application of new State law to his case." This was not the situation in *Provost* nor is it at bar.

Apart from the factual irrelevance of Goldberg v. Kelly to the constitutional point under discussion, it does state the general criteria for determining when procedural due process—notice and an opportunity for hearing—must be honored. At pages 262–263 of 397 U.S., at page 1017 of 90 S.Ct. the Court said:

> "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss", Joint Anti-Fascist Refugee

Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in Cafeteria & Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, 6 L.Ed.2d 1230 (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." See also Hannah v. Larche, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960)."

■ Essentially the rule of due process is one of fairness under the circumstances and demands a balancing of the interests of the individual with those of the State. Cf. Grausam v. Murphey, 448 F.2d 197, 206 (3d Cir. 1971).

■ In the instant case the government had a vital interest as a matter of State fiscal policy in maintaining the financial integrity of the program for the entire period during which the Legislature intended it to operate. From a human standpoint, too, it was the concern of the State to see to it that persons eligible for relief should receive monthly assistance from available funds without interruption until June 30, 1972. Cf.

Goldberg v. Kelly, *supra*, 397 U.S. at 265, 90 S.Ct. 1011, 25 L.Ed.2d 287. The State was not insensitive to the degree of destitution and resultant proliferation of public problems which would eventuate if beneficiaries in the program were to be deprived of all assistance for four months prior to June 30, 1972. The consciousness of the State to their prospective plight and of its own fiscal responsibility was borne out by the prompt action which it took.[8] Like the interest of the State, "the interest of the eligible recipients [was] in uninterrupted receipt of public assistance. . . . " Goldberg v. Kelly, *supra*, at 266, 90 S.Ct. at 1019.

Plaintiffs argue, however, that as a matter of essential fairness the notice they received was not sufficient to enable them to accommodate their standard of living to the reduction. On or about October 27, 1971, the defendant Hiland announced through the *News Journal*, a newspaper of general circulation in Wilmington, that there would be a 11.7 per cent reduction in AFDC grants. On October 27, 1971, a notice was sent to plaintiffs and their class stating that owing to "the limitation of available funds" there would be a reduction in payments effective November 1971 and that they had the right to appeal and have an informal conference with the Division and a formal hearing.[9] This notice was received by the plaintiffs on October 29, 1971.[10] This was seven days in advance of receipt of their November payments. Seven days notice is not per se constitutionally insufficient. See Goldberg v.

8. Plaintiffs argue that it is improbable that State funds available to AFDC program will be exhausted before June 30, 1972. They assert that if there were no monthly curtailment in aid and the state were faced with the depletion of AFDC resources prior to June 30, 1972, before the funds were exhausted the General Assembly would probably act to stave off the impending deficit and pass supplemental appropriation legislation. This assumption is too speculative to be the basis of judicial action.

9. Paragraphs 7, 9 Complaint.

10. Paragraph 6 of affidavits of plaintiffs Rochester and Gibson. The affidavits of Veaster White and Pauline McNeil, alleged members of the class on whose behalf plaintiffs have sued, state that the only notice of the reduction which they received was that enclosed with their November check. It read:

STATE OF DELAWARE
DEPARTMENT OF HEALTH AND
SOCIAL SERVICES DIVISION
OF SOCIAL SERVICES
November 1, 1971

The Division of Social Services *has* adjusted your assistance grant effec-

Kelly, *supra*, 397 U.S. at 268, 90 S.Ct. 1011.

The interest of the State and of program beneficiaries, on balance, militated in favor of immediate reduction without more notice than was given as against providing for longer notice. The consequences of the latter alternative would have been to postpone the effective date of the reduction and to require proportionately larger reductions in payments that followed in the ensuing months.

With regard to plaintiffs' motion for a preliminary injunction directing defendants to supplement the November payments to make up for the November 1971 11.7 per cent reduction, it is improbable that the claimed violations of the Federal and State regulations and the Due Process Clause will be established at final hearing.

To grant plaintiffs' motion would, of course, put additional monies immediately in the pockets of those who received November distributions. Sufficient time has now passed for persons who received aid in November to make adjustments to their living standards to conform to the reduction. Furthermore, if supplementation of the November payments should be decreed, the benefits paid in the future to November recipients and to others who since November have or will become eligible for benefits will have to be further reduced if exhaustion of funds before June 30, 1972 is to be avoided. In addition, a supplemental distribution would put the State to the expense of recomputing and distributing the supplemental checks without any overall benefits to the recipients of assistance.

On balance, the injury which plaintiffs and members of their class may have experienced is no greater than and probably is something less than the totality of the detriment which they and other beneficiaries entitled to later distributions and the State will be exposed to if supplementation of the November payments should be ordered.

Irreparable harm to plaintiffs has not been demonstrated.

Under the test of Bowers v. Columbia General Corporation, *supra*, plaintiffs have failed to bear the burden of showing that they are entitled to a preliminary injunction.

This opinion constitutes the findings of fact and conclusions of law necessary under Rule 52.

Plaintiffs' motion will be denied.

## APPENDIX

### RULES AND REGULATIONS

### Title 45—PUBLIC WELFARE

Chapter II—Social and Rehabilitation Service (Assistance Programs), Department of Health, Education, and Welfare

PART 205—GENERAL ADMINISTRATION—PUBLIC ASSISTANCE PROGRAMS

#### Fair Hearings

Notice of proposed rule making for the programs administered under titles I, IV–A, X, XIV, XVI, and XIX of the Social Security Act, relating to fair hearings in public assistance programs, was published in the FEDERAL REGISTER on May 29, 1970 (35 F.R. 8448). After consideration of the views presented by interested organizations, agencies, and individuals, the following changes were made:

1. Section 205.10(a) (5) now requires that the State agency shall determine whether the issue is one of fact or judgment or of State agency policy; that assistance will continue until such determination is made, and—where the issue is one of fact or judgment—until a fair hearing decision is reached. It incorpo-

---

tive November 1971. This is a budget change due to the limitation of available funds and to correct an error made in September. You have the

right to appeal; to be represented by legal counsel; to have an informal conference; a formal fair hearing.
Division of Social Service Payments

rates the substance of the proposed § 206.11 (which has been omitted) and requires a minimum advance period of 15 days rather than 7 days. It clarifies the State's option of continuing assistance regardless of the nature of the issue, and even if the request for a hearing is made after expiration of the advance notice period.

2. Section 205.10(a) (3) (v) is changed to provide that any claimant scheduled for a group hearing may withdraw and be given an individual hearing instead.

3. Clarifying changes are also made in § 205.10(a) (3), first paragraph (opportunity for a fair hearing regarding suspension of assistance), § 205.10(a) (9) (medical assessment from a source satisfactory to a claimant) and § 205.10 (a) (10) (i) (opportunity to examine hearing evidence in advance).

4. The requirement for provision of legal services contained in §§ 205.10 and 220.25 was separately revoked (see 35 F.R. 10591, June 30, 1970).

Accordingly, § 205.10, Part 205, Chapter II, Title 45 of the Code of Federal Regulations is revised to read as follows:

§ 205.10  Fair hearings.

(a) *State plan requirements.* A State plan under title I, IV–A, X, XIV, XVI or XIX of the Social Security Act must provide for a system of fair hearings under which:

(1) The single State agency responsible for the program will be responsible for fulfillment of fair hearings provisions.

(2) Every claimant will be informed in writing at the time of application and at the time of any action affecting his claim:

(i) Of his right to fair hearing;

(ii) Of the method by which he may obtain a hearing;

(iii) That he may be represented by legal counsel, or by a relative, friend, or other spokesman, or he may represent himself; and

(iv) Of any provision for payment of legal fees by the agency.

(3) An opportunity for a fair hearing before the State agency will be granted to any individual requesting a hearing because his claim for financial or medical assistance is denied, or is not acted upon with reasonable promptness, or because he is aggrieved by any other agency action affecting receipt, suspension, reduction, or termination of such assistance or by agency policy as it affects his situation. Under this requirement:

(i) A request for a hearing is defined as any clear expression (oral or written) by the claimant (or person acting for him, such as his legal representative, relative, or friend) to the effect that he wants the opportunity to present his case to higher authority.

(ii) The freedom to make such a request must not be limited or interfered with in any way, and agency emphasis must be on helping the claimant to submit and process his request, and in preparing his case, if needed.

(iii) The claimant must be provided reasonable time in which to appeal an agency action.

(iv) The fair hearing shall include consideration of:

(a) Any agency action, or failure to act with reasonable promptness, on a claim for financial or medical assistance, which includes undue delay in reaching a decision on eligibility or in making a payment, refusal to consider a request for or undue delay in making an adjustment in payment, and suspension or discontinuance of such assistance in whole or in part;

(b) The agency's interpretation of the law, and the reasonableness and equitableness of the policies promulgated under the law, if the claimant is aggrieved by their application to his situation;

(c) Agency decision regarding:

(1) Eligibility for financial or medical assistance in both initial and subsequent determinations,

(2) Amount of financial or medical assistance or change in payments,

(3) The manner or form of payment, including restricted or protective pay-

ments, even though no Federal financial participation is claimed, and

(4) Conditions of payment, including work requirements.

(v) States may respond to a series of individual requests for fair hearings by conducting a single group hearing. States may only consolidate cases in which the sole issue involved is one of an agency policy. In such a situation, each individual must be given the right to withdraw from the group hearing in favor of an individual hearing. If recipients request a group hearing on such an issue the State must grant it. In all group hearings, whether initiated by the State or by the claimants, the policies governing fair hearings must be followed. Thus, each individual claimant must be permitted to present his own case and be represented by his own lawyer.

(vi) The agency shall not deny or dismiss a request for a hearing except where it has been withdrawn by claimant in writing, or abandoned.

(4) Hearing procedures will be issued and publicized by the State agency for the guidance of all concerned.

(5) In cases of any proposed action to terminate, suspend or reduce assistance:

(i) The State or local agency will give timely and adequate advance notice detailing the reasons for the proposed action. Under this requirement:

(a) "Timely" means that the notice is mailed at least 15 days before the action is to be taken.

(b) "Adequate advance notice" means a written notice that includes details of reasons for the proposed agency action, explanation of the individual's right to conference, his right to request a fair hearing and the circumstances under which assistance is continued if a fair hearing is requested.

(ii) If, within the advance notice period, the individual responds by indicating his wish for an agency conference, an opportunity is provided for the recipient (or his representative) to discuss his situation with agency staff, obtain an explanation of the reasons for the proposed action, and present information to show that the proposed action is incorrect. Under this requirement:

(a) During this conference, the recipient is given the opportunity to speak for himself or be represented by legal counsel or by a friend or other spokesman.

(b) The opportunity for a conference does not in any way diminish the recipient's right to a fair hearing.

(iii) (a) In cases in which there is a request for a fair hearing within the advance notice period:

(1) Assistance is continued until the fair hearing decision is rendered and through a period consistent with the State's established policies for issuance of payments unless a determination is made by the State agency, in accordance with criteria issued by the Social and Rehabilitation Service, that the issue is one of State agency policy and not one of fact or judgment relating to the individual case, including a question of whether the State agency rules or policies were correctly applied to the facts of the particular case.

(2) The agency promptly informs the claimant in writing if assistance will be discontinued, based on the State agency's determination.

(b) Alternatively, the State may provide for continuing assistance in all cases.

In cases in which a fair hearing is requested after expiration of the advance notice period, the State may provide for an additional period during which time the request for a hearing will result in reinstatement of assistance to be continued until the fair hearing decision.

(6) Information and referral services are provided to help claimants make use of any legal services available in the community that can provide legal representation at the hearing.

(7) The hearing will be conducted at a time, date and place convenient to the claimant, and adequate preliminary written notice will be given.

(8) The hearings will be conducted by an impartial official (or officials) of the State agency. Under this requirement, the hearing official must not have been involved in any way with the action in question.

(9) When the hearing involves medical issues such as those concerning a diagnosis, or an examining physician's report, or the medical review team's decision, a medical assessment other than that of the person or persons involved in making the original decision will be obtained at agency expense from a source satisfactory to the claimant and made part of the record if the hearing officer or the appellant considers it necessary.

(10) The claimant, or his representative, will have adequate opportunity:

(i) To examine all documents and records used at the hearing at a reasonable time before the date of the hearing as well as during the hearing;

(ii) At his option, to present his case himself or with the aid of others including legal counsel;

(iii) To bring witnesses;

(iv) To establish all pertinent facts and circumstances;

(v) To advance any arguments without undue interference;

(vi) To question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

(11) Prompt, definitive, and final administrative action will be taken within 60 days from the date of the request for a fair hearing, except where the claimant requests a delay in the hearing.

(12) The claimant will be notified of the decision, in writing, in the name of the State agency and, to the extent it is available to him, of his right to judicial review.

(13) When the hearing decision is favorable to the claimant, or when the agency decides in favor of the claimant prior to the hearing, the agency will make corrective payments retroactively to the date the incorrect action was taken or such earlier date as is provided under State policy.

(14) Recommendations of the hearing officer or panel shall be based exclusively on evidence and other material introduced at the hearing. The verbatim transcript of testimony and exhibits, or an official report containing the substance of what transpired at the hearing, together with all papers and requests filed in the proceeding, and the recommendations of the hearing officer or panel will constitute the exclusive record for decision by the hearing authority and will be available to the claimant at a place accessible to him or his representative at any reasonable time.

(15) Decisions by the hearing authority, rendered in the name of the State agency, shall specify the reasons for the decision and identify the supporting evidence. They shall be binding on the State and local agency. Under this requirement:

(i) No person who participated in the local decision being appealed will participate in a final administrative decision on such a case;

(ii) The State agency is responsible for seeing that the decision is carried out promptly.

(16) The State agency will establish and maintain a method for informing, at least in summary form, all local agencies of all fair hearing decisions by the hearing authority and the decisions will be accessible to the public (subject to provisions of safeguarding public assistance information).

(17) In respect to title XIX, when the appeal has been taken on the basis of eligibility determination, the agency responsible for the determination of eligi-

**362**

bility for medical assistance, if different from the single State agency administering the medical assistance plan, shall participate in the conduct of the fair hearing.

(b) *Federal financial participation.* Federal financial participation is available for the following items:

(1) Payments of assistance continued pending a hearing decision;

(2) Payments of assistance made to carry out hearing decisions, or to take corrective action after an appeal but prior to hearing, or to extend the benefit of a hearing decision or court order to others in the same situation as those directly affected by the decision or order. Such payments may be retroactive in accordance with applicable Federal policies on corrective payments.

(3) Payments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order.

(4) Service costs incurred by the agency, at the applicable matching rates, for:

(i) Providing legal counsel to represent clients at hearings or in judicial review;

(ii) Providing transportation for the claimant, his representative and witnesses to and from the place of the hearing;

(iii) Meeting other expenditures incurred by the client in connection with the hearing.

(5) Administrative costs incurred by the agency in carrying out the hearing procedures, including expenses of obtaining an additional medical assessment.
(Sec. 1102, 49 Stat. 647, 42 U.S.C. 1302)

*Effective date.* The regulations shall become effective 60 days from the date of their publication in the FEDERAL REGISTER.

Dated: November 23, 1970.

JOHN D. TWINAME,
Administrator, Social and
Rehabilitation Service.

Approved: February 6, 1971.

ELLIOT L. RICHARDSON,
Secretary.

[FR Doc. 71–1981 Filed 2–12–71; 8:45 am]