■ In the Matter of JOANN MITCHELL, Respondent, v MARY JO BANE, as Commissioner of the New York State Department of Social Services, Appellant, et al., Respondent. In the Matter

of ANDERSON BROWN, Respondent, v MARY JO BANE, as Commissioner of the New York State Department of Social Services, Appellant, et al., Respondent. [630 NYS2d 495] —Judgment, denominated an order and judgment (one paper), Supreme Court, New York County (Alice Schlesinger, J.), entered on or about January 24, 1994, which awarded attorney's fees to petitioner Mitchell in the amount of $2,700, unanimously affirmed, without costs. Judgment, denominated an order and judgment (one paper), same court and Justice, which awarded attorney's fees to petitioner Brown in the amount of $3,150, unanimously affirmed, without costs.

Petitioners are recipients of public assistance. Respondent Mary Jo Bane is the Commissioner of respondent New York State Department of Social Services. Barbara Sabol, Commissioner of the New York City Department of Social Services, also named in the respective petitions, has not appeared in these proceedings.

In July 1992, petitioner Joann Mitchell received a Notice of Intent from the New York City Department of Social Services (City Agency) indicating that her benefits would be discontinued. She thereupon requested an administrative fair hearing before respondent New York State Department of Social Services (State Agency). In August 1992, respondent granted Ms. Mitchell interim relief, directing the City Agency to calculate her welfare budget based on her actual rent rather than the maximum "shelter allowance". At the hearing, held in November 1992, the City Agency agreed to restore all lost benefits pursuant to a settlement agreement. However, a mere five days later, without stating a reason, the City Agency notified Ms. Mitchell that it intended to reduce her benefits. Respondent State Agency directed the City Agency to continue paying benefits, without reduction, pending a hearing. At a second hearing, conducted in December 1992, the City Agency again agreed to restore all lost benefits. Nevertheless, petitioner Mitchell received no cash allowances for the period from September 1992 through February 1993, and her landlord was paid less than the amount to which the City Agency had stipulated.

Petitioner complained to respondent's Office of Administrative Hearings Compliance Unit about the City Agency's failure to comply with the December 1992 settlement agreement. After reviewing computer printouts, the Compliance Coordinator determined that the City Agency's actions were in conformance with the settlement agreement, stating that, "inasmuch as the petitioner [Mitchell] was in receipt of a zero cash grant both

before and after the notice in question, there is no further relief to be granted". Although the Compliance Unit acknowledged receipt of petitioner's complaint by letter dated February 8, 1993, it never informed Ms. Mitchell of the results of its investigation.

The proceeding subject to appeal was brought pursuant to CPLR article 78 in March 1993, seeking restoration of monthly benefits, payment of retroactive benefits and attorney's fees. Respondent State Agency interposed an answer. The City Agency did not appear but entered into a third settlement agreement, pursuant to which Ms. Mitchell finally received her benefits.

Petitioner Anderson Brown, Joann Mitchell's brother, received notice in October 1992 that the City Agency had reduced his benefits because of an overpayment. Later that month, Mr. Brown's benefits, including cash assistance, Medicaid and Food Stamps, were completely discontinued, without notice. Following an administrative hearing before respondent State Agency, the City Agency was directed to restore all lost benefits, retroactive to the date of the reduction notice.

By letter dated February 5, 1993, Anderson Brown informed respondent's Office of Administrative Hearings Compliance Unit that his benefit payments had been reduced, complaining that the City Agency had failed to conform to the terms of the fair hearing decision. After reviewing computer printouts, the Compliance Coordinator determined that the City Agency had abided by the terms of the State Agency's decision; that retroactive benefits due had been credited to another outstanding recoupment (the source of which has not been identified); and that petitioner Brown was now being provided with public assistance benefits as a member of his sister's household. While acknowledging receipt of his complaint, Mr. Brown was never informed of the results of the Compliance Unit's investigation.

The article 78 proceeding under review was instituted against the City Agency, asserting that it refused to comply with the fair hearing decision, and against the State Agency, charging that it failed to secure the City Agency's compliance. The petition seeks attorney's fees pursuant to CPLR article 86. The State Agency interposed an answer. The City Agency did not appear, instead entering into an oral agreement in settlement of the matter.

Supreme Court awarded both petitioner Mitchell and petitioner Brown attorney's fees, as provided in CPLR 8601 (a), to be paid by respondent State Agency. The court held that respondent's position was not "substantially justified" and that

"the State [Agency] was intimately involved" with petitioners' difficulties with the City Agency, noting that respondent held hearings and was a party to the respective determinations and settlements.

On appeal, respondent State Agency argues that it cannot be held vicariously liable for the actions of a local government agency for purposes of the award of counsel fees pursuant to CPLR article 86. It further contends that, in any event, the award is improper because the State's position during the course of the administrative proceedings (CPLR 8602 [a], [e]) was "substantially justified" within the meaning of CPLR 8601 (a). No question is presented with respect to the status of either petitioner as a "prevailing party" within the contemplation of this section. Nor is any issue raised regarding their eligibility for the award (CPLR 8602 [d]).

As evident from the language of CPLR 8600, the New York State Equal Access to Justice Act (CPLR article 86) is "similar to the provisions of federal law contained in 28 U.S.C. § 2412 (d) and the significant body of case law that has evolved thereunder." As the Governor's Memorandum approving the legislation states, and as respondent concedes, "the legislative intent to follow federal case law, including the Pierce decision [*Pierce v Underwood*, 487 US 552], in interpreting this statute, is clear" (Governor's Mem approving L 1989, ch 770, 1989 NY Legis Ann, at 336; *but see, Matter of New York State Clinical Lab. Assn. v Kaladjian*, 85 NY2d 346, 354 [Legislature's departure from Federal statute evinces an intent to impose a stricter standard for demonstrating prevailing party status]). As *Pierce v Underwood* (487 US, *supra,* at 559-560) holds, the standard for review under the Equal Access to Justice Act is whether the court abused its discretion in granting an award of counsel fees. De novo review is expressly rejected, the Court emphasizing that the abuse of discretion standard "will implement our view that a 'request for attorney's fees should not result in a second major litigation.'" (*Supra*, at 563, quoting *Hensley v Eckerhart*, 461 US 424, 437.)

On the record before us, it cannot be said that Supreme Court abused its discretion in making the award to petitioners pursuant to the New York State Equal Access to Justice Act. Respondent's argument that it cannot be held liable for the action (or inaction) of the New York City Department of Social Services was rejected by the Court of Appeals in *Matter of Thomasel v Perales* (78 NY2d 561, 570): "Local social service commissioners 'act on behalf of and as agents for the State. Each is a part of and the local arm of the single State

administrative agency.' (*Matter of Beaudoin v Toia*, 45 NY2d 343, 347.)" The Court concluded, "Imposing responsibility for attorney's fees on the State [Department of Social Services] takes this structure into account and avoids evasion of responsibility by bureaucratic fingerpointing and red-tape shufflings (*see, e.g., Matter of Zellweger v New York State Dept. of Social Servs.*, 74 NY2d 404; *Matter of Sabot v Lavine*, 42 NY2d 1068)" (*supra,* at 570). The matter under review is similar to the situation in *Matter of Thomasel v Perales* (*supra,* at 570), in that "the State [Department of Social Services] was a signatory to the stipulation of settlement and agreed to the relief accorded to petitioner to end the lawsuit".

While respondent attempts to distinguish *Thomasel* on the ground that it deals with fees awarded in a civil rights' case under 28 USC § 1983, it has long been recognized that the termination of benefits during the pendency of administrative hearings offends the constitutional guarantee to due process accorded by the Fourteenth Amendment (*Matter of Thomasel v Perales, supra,* at 569, citing *Goldberg v Kelly*, 397 US 254; *Wheeler v Montgomery*, 397 US 280). The similarity to the case at bar is patent and, in any event, this Court finds the holding that the City Agency is an agent of the State entirely dispositive of the question concerning respondent's liability for attorney's fees imposed pursuant to CPLR article 86. The statute defines "State" as "the state or any of its agencies or any of its officials acting in his or her official capacity" (CPLR 8602 [g]).

The question of whether respondent State Agency was " 'substantially justified' " in reducing or eliminating petitioners' benefit payments is likewise one in which the findings of Supreme Court must be accorded deference (*Matter of New York State Clinical Lab. Assn. v Kaladjian, supra,* at 356). As noted in *Pierce v Underwood* (*supra,* at 560), the court entertaining the application "may have insights not conveyed by the record" and is generally better situated to decide the issue.

Upon the record before us, it cannot be said that Supreme Court abused its discretion in determining that respondent's position was without substantial justification. In view of questions concerning the constitutionality of reducing public assistance benefits before culmination of the hearing process (*Matter of Thomasel v Perales, supra,* at 569), this Court is unable to characterize the reduction or termination of petitioners' benefits, sometimes without notice or explanation, as substantially justified. Moreover, as respondent's attempt to absolve itself of responsibility for the acts of its agent has been rejected,

the State Agency's directives to comply with its orders are not a satisfactory basis upon which to conclude that its failure to secure the City Agency's compliance with its rulings had a " ' "reasonable basis both in law and fact" ' " (*Matter of New York State Clinical Lab. Assn. v Kaladjian, supra*, at 356, quoting *Pierce v Underwood, supra*, at 565). Respondent has the obligation to supervise the City Agency and the authority "to sanction local districts for failure to comply with State [Department of Social Services] rules (42 USC § 602 [a] [3]; Social Services Law § 34 [3] [d]; § 20 [3] [e])" (*Matter of Thomasel v Perales, supra*, at 570). It cannot evade liability under the statute by invoking the segmentation of responsibility within the bureaucratic structure, imposed largely for the sake of convenience. Concur—Sullivan, J. P., Rubin, Asch, Nardelli and Tom, JJ.