Mary Angel **GONZALES** et al.

v.

**Raymond G. VOWELL, Commissioner of Public Welfare for the State of Texas.**

**Civ A. No. CA 4–1904.**

United States District Court,
N. D. Texas,
Fort Worth Division.

April 19, 1973.

R. M. Helton, Wichita Falls, Tex., for plaintiff.

John Hill, Atty. Gen. by Robert W. Gauss, Asst. Atty. Gen., Austin, Tex., for defendant.

MAHON, District Judge.

Plaintiff Mary Angel Gonzales seeks a declaration from this Court that the procedures undertaken by the State of Texas in terminating certain welfare benefits were in violation of plaintiff's constitutional rights of due process and that, therefore, termination of such benefits was without legal force and effect. It is also alleged that the refusal to appoint the appellant's chosen counsel to represent her in a post-termination "fair hearing" was a further denial of procedural due process of law.[1]

In Lockhart, Texas, Plaintiff Gonzales, the widowed mother of four minor children, made application for financial aid under the federally assisted program of Aid to Families with Dependent Children (AFDC).[2] She also made application for payments under the "Federal Old Age, Survivors, and Disability Insurance Benefits" program, (OASDI), which is administered solely by an agency of the federal government.[3] She began receiving the benefits under both of these programs at approximately the same time in August of 1971.

The action of which complaint is made occurred on October 20, 1971. On that date, Plaintiff Gonzales, who had moved to Fort Worth, went to the Office for the State Department of Public Welfare in that city to discuss a problem she was having regarding the purchase of a house. In the course of Plaintiff's discussion with Caseworker Dorothy Bates, it was determined that Plaintiff was receiving $171.00 per month in AFDC benefits. This represented 75% of the Gonzales family's "recognizable needs" and was, therefore, the maximum that could be received under the AFDC program in Texas.[4] She further stated that she was receiving $425.00 in federal social security monies—these were in the nature of survivors' insurance benefits.[5] As set forth in the guidelines and regulations for the Department of Public Welfare and as stated to Plaintiff Gonzales at that time, policy and regulations provided that if income enjoyed by a family meets or exceeds the recognizable needs, the family is not eligible for State AFDC assistance. Upon learning that federal Social Security Survivors' benefits in the amount of $429.00 were being received by the Gonzales family, but that recognizable needs were $228.00, the Caseworker Bates made known that the AFDC payments would be terminated. This was done without notice and without a prior hearing. Upon being so informed, Plaintiff Gonzales signed an instrument of the Department of Public Welfare, Form 17–W, designated "Waiver of Right to Appeal", wherein she stated that she waived the right to appeal the recommendation of the caseworker whereby her assistance was being lowered. She checked that provision of the form which stated "I understand the reason for this action and do not wish to appeal."

On October 22, 1971, in a letter directed to the Department of Public Welfare, R. M. Helton, attorney for plaintiff's mother, sought recision of the waiver and asked for an appeal from the action of October 20, 1971. On December 28, 1971, plaintiff and her counsel appeared at the Office of the State Department of Public Welfare in Fort Worth for a "fair hearing" concerning the termination of State welfare benefits to Mary

---

1. See note 6, *infra*.

2. "AFDC was established by the Social Security Act of 1935, 49 Stat. 627, as amended, 42 U.S.C. §§ 601–610 [(1970)]. It is a categorical assistance program supported by federal grants-in-aid but administered by the States according to regulations of the Secretary of Health, Education, and Welfare." Goldberg v. Kelly, 397 U.S. 254, 255 n. 1,

90 S.Ct. 1011, 1014, 25 L.Ed.2d 287, 292 n. 1 (1970). *See* Tex.Rev.Civ.Stat.Ann. art. 695c, § 17 (1972 Supp.)

3. 42 U.S.C.A. §§ 401–429 (1970).

4. Plan E–450, Texas State Department of Public Welfare, effective September 1, 1969.

5. The amount was later determined to be $429.00.

A. Gonzales.[6] At that time Attorney Helton indicated that he had agreed to represent Plaintiff Gonzales pursuant to Article 695c, § 32(1), Tex.Rev.Civ.Stat. Ann., and requested that the Hearing Officer appoint him as her counsel.[7] The Appeals Analyst under whose direction the hearing was being conducted informed counsel that his application that he be appointed to represent Plaintiff Gonzales was being denied.[8] Upon the insistence of Attorney Helton that he be appointed and that the Appeals Analyst consult her superiors in this matter, the hearing of December 28, 1971, was recessed.

Thereafter, on February 8, 1972, the hearing pertaining to the termination of State Public Welfare benefits of Mary A. Gonzales was resumed in Fort Worth. At the hearing then conducted, Attorney Helton again excepted to the failure of Department of Public Welfare to appoint him as Plaintiff Gonzales' attorney. Thereafter, the Hearing Officer, in reviewing the termination of State Welfare benefits to Plaintiff Gonzales, established that the Gonzales family was receiving federal Social Security survivors' benefits in the amount of $429.00. Under the guidelines and regulations of the Department of Public Welfare for the State of Texas, monetary benefits could be granted in the amount of 75% of the family's recognizable needs which were not met by other income.[9] The recognizable needs under the Department's guidelines were $25.00 per child, or, as applicable to plaintiff's family, $100.00; $65.00 for the personal needs of the adult caretaker; $50.00 per month maximum allowance for housing; and $13.00 for utilities. The total needs were calculated to be $228.00, 75% of which would be $171.00.

6. Under 42 U.S.C. § 602(a)(4) "A State plan for aid and services to needy families with children must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness. . . . "
This provision has been interpreted to require "a State to afford a 'fair hearing' to any recipient of aid under a federally assisted program before termination of his aid becomes final." Goldberg v. Kelly, 397 U.S. 254, 257 n. 3, 90 S.Ct. 1011, 1015, 25 L.Ed.2d 287, 293 n. 3. (1970). The regulations of the Department of Health, Education, and Welfare concerning "fair hearings" appear in 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (Feb. 13, 1971).
The Texas regulations pertaining to fair hearings are included in Administrative Procedures Handbook, State Department of Public Welfare, Section 1170.

7. "The State Department of Public Welfare is authorized to provide legal services to an applicant for or recipient of assistance, under any of the programs administered by the Department, in an appeal or fair hearing before the Department if the applicant or recipient requests such legal services. Such services shall be provided by an attorney legally licensed to practice in the State of Texas, or through the use of law students acting under the supervision of a law teacher or of a legal services organization, and who has been approved by the State Department of Public Welfare. The State Department shall adopt a reasonable fee schedule for such services, such fees not to exceed those customarily charged by the attorney for similar services for private clients. Such fees shall be paid only out of such funds as may be appropriated to the Department for this purpose." Tex.Rev.Civ.Stat.Ann., art. 695c, § 32 (1).

8. In the complaint presented before this Court, Plaintiff urges that the State committed error by refusing to appoint either Attorney Helton, "or some other attorney legally licensed to practice in the State of Texas. . . . "

9. Section 17, art. 695c, Tex.Rev.Civ.Stat. Ann. (1972 Supp.), Aid to Families with Dependent Children, includes the following provision:
"In determining need, the State Department of Public Welfare shall take into consideration any other income and resources of any child or relative claiming Aid to Families with Dependent Children, as well as any expenses reasonably attributable to the earning of any such income. . . . "
See also 42 U.S.C. § 602(a)(7); Reyna v. Vowell, 470 F.2d 494 (5th Cir. 1972).

The "budget sheet" which was part of the "Official Record of Fair Hearing," reflected that the Gonzales' total needs were $228.00, that 75% of the recognizable needs were $171.00, and, further, that net income was $429.00. "Unmet Needs" were shown to be zero. With the exception of the $4.00 variance in plaintiff's net income, the figures were consistent with those recorded by Caseworker Bates at the time of termination. Her action in terminating the AFDC benefits was affirmed by the Hearing Officer.

Plaintiff Gonzales urges that the action of the caseworker in Fort Worth on October 20, 1971, undertaken pursuant to § 1170(2) of the Administrative Procedures Handbook, Texas Department of Public Welfare (as then in effect), was in violation of both the federal regulations regarding "fair hearings", 45 C.F. R. § 205.10, and in violation of the dictates of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiff urges that the termination of her assistance under the AFDC program was an unconstitutional deprivation of a "statutory entitlement" provided under the Social Security Act of 1935 and was a denial of plaintiff's civil rights.[10]

In *Goldberg* the Supreme Court considered the question whether due process "requires that the recipient [of welfare benefits] be afforded an evidentiary hearing *before* the termination of benefits." 397 U.S. at 260, 90 S.Ct. at 1016. The Court, after observing that "[s]uch benefits are a matter of statutory entitlement for persons qualified to receive them" went on to state:

"  . . .  [W]hen welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. *Cf.* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. *Cf.* Nash v. Florida In-

dustrial Commission, 389 U.S. 235, 239, 88 S.Ct. 362, 366, 19 L.Ed.2d 438 [, 442] (1967). Thus the crucial factor in this context.  .  . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." 397 U.S. at 264, 90 S.Ct. at 1018 (footnotes omitted).

This Court concludes that the factual circumstances in the case at bar distinguish it from Goldberg v. Kelly, *supra.* The Supreme Court, in *Goldberg*, expressly directs its holding toward the termination of welfare benefits which are in the nature of "statutory entitlement." Consistent with this is the language in *Goldberg* wherein concern is shown for the deprivation of benefits which had previously been accorded "eligible" or "qualified" recipients. Further, the holding in *Goldberg*, in showing concern for due process considerations, places significant emphasis on the necessity of a pre-termination hearing in order that there be "an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." 397 U.S. at 267, 90 S.Ct. at 1020. The Court goes on to say that fundamental principles of due process

"require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments in evidence orally. These rights are important in cases.  .  . where recipients have challenged proposed ter-

10. 42 U.S.C. 1983 (1970).

minations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts, of particular cases." 397 U.S. 267–268, 90 S.Ct. at 1020.

Plaintiff Gonzales testified at trial she was told at the office of the State Department of Public Welfare in Lockhart that "the amount of Social Security would determine whether you were eligible for welfare." She further testified that when she first applied for welfare, an official advised her that she was

"going to have to report to us and tell us how much Social Security you are receiving and then we will help you until then, and afterwards when you tell us how much Social Security you are going to have . . . then they would definitely know whether they were eligible to help me or not."

Plaintiff testified that she understood from the time she first visited the Lockhart office of the Department of Public Welfare that when she started drawing Social Security she might not be eligible for state welfare benefits. She testified that on October 20, 1971, in Fort Worth, she understood that the state welfare benefits were being stopped because she was receiving $429.00 in Social Security payments. It was Plaintiff Gonzales' testimony that she understood "at all times" the reasons for the termination of her AFDC benefits.

As was shown by the very regulations under which plaintiff urges further benefits should have been received, she, in fact, was not eligible for any benefits under the State Welfare Plan and certainly had no claim of a statutory entitlement thereto. Further, not only were the factual elements of this case and the rule of law applicable thereto not subject to question, the only witness by whose testimony it was established that the plaintiff had no right to the State welfare benefits was Plaintiff Gonzales herself.

The Court considers it significant that the AFDC benefits which were terminated on October 20, 1971, represent but one category of assistance provided for by the Social Security Act.[11] The termination of Social Security AFDC benefits which had theretofore accrued to Plaintiff Gonzales was, as she was informed at the time, premised upon the fact that other Social Security income which she was receiving exceeded the recognizable needs under which such AFDC benefits were determined. The termination of AFDC benefits, benefits derived under the Social Security Act of 1935, by virtue of other benefits being received under the Social Security Program was not a termination of all benefit, but was, in reality, a reduction of benefits. In Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970), the Supreme Court said, "This Court's subsequent decisions in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, and Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307, [decided March 23, 1970] dealt only with termination and suspension, not reduction, of benefits." This Court considers Plaintiff Gonzales to be a "reducee", not a "terminee." Merriweather v. Burson, 439 F.2d 1092, 1093 (5th Cir. 1971).[12]

---

11. In addition to Aid to Families With Dependent Children, 42 U.S.C. § 601 et seq., state administered Social Security programs include Old Age Assistance (OAA), 42 U.S.C. § 301 et seq., Tex.Rev.Civ.Stat.Ann. art. 695c § 20; Aid to the Blind (AB), 42 U.S.C. § 1201 et seq., Tex.Rev.Civ.Stat.Ann. art. 695c § 12; Aid For the Permanently and Totally Disabled (APTD), 42 U.S.C. § 1351 et seq., Tex.Rev.Civ.Stat.Ann. art. 695c § 16.

12. The Court is aware that OASDI benefits are not considered to be in the nature of welfare assistance as such. *See, e. g.,* Schmiedigen v. Celebrezze, 245 F.Supp. 825 (D.D.C.1965). Nevertheless, they are benefits under the Social Security Act and are in keeping with the overall intention of that legislation "to ameliorate some of [the] rigors that life imposes," Butler v. Flemming, 288 F.2d 591, 595 (5th Cir. 1961) ; Page v. Celebrezze, 311

It is clear that not all terminations of benefits must be preceded by an evidentiary hearing. Goldberg v. Kelly, *supra,* 397 U.S. at 263, 90 S.Ct. at 1018, 25 L.Ed.2d at 296. Further, the Supreme Court has indicated that when the question is one of reduction, not termination, a prior evidentiary hearing is not automatically called for. Daniel v. Goliday, *supra; see* Merriweather v. Burson, 439 F.2d 1092 (5th Cir. 1971); Almenares v. Wyman, 453 F.2d 1075, 1082–1083 (2nd Cir. 1971), cert. denied 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Copeland v. Parham, 330 F.Supp. 383, 385 (N.D.Ga.1971); Rochester v. Ingram, 337 F.Supp. 350, 356–357 (D.Del.1972).

This Court specifically finds that those benefits terminated on October 20, 1971, were benefits to which Plaintiff Gonzales had no right. Further, the Court finds there was no factual dispute involved and no question of the applicable regulations and/or law. The termination without prior notice and hearing did not constitute a denial of due process.

Plaintiff having had no right to the benefits or to a pre-termination hearing with regard thereto, the Court is not inclined to conclude that any error, statutory or otherwise, was shown by the refusal of the Department of Public Welfare to appoint plaintiff's chosen counsel to represent her. The contention that the Department of Public Welfare violated Section 32(1) of Article 695c Tex.Rev.Civ.Stat.Ann. (1969) and the HEW Regulations set forth at 45 C.F.R. § 205.10(a)(2)(iv) and § 205.10(b)(4)(i) is without merit. The Supreme Court in *Goldberg* did "not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to retain

an attorney if he so desires." 397 U.S. at 270, 90 S.Ct. at 1022. Further, § 32(1) of Article 695c does not compel the provision of funds for legal assistance with regard to hearings conducted on public welfare matters but merely *authorizes* the Department to provide legal services. The statute expressly says, "Such fees shall be paid only out of such funds as *may* be appropriated to the Department for this purpose." Further, the HEW regulations with regard to fair hearings do not direct that a State shall pay for claimant's expenses, but only direct that if a fair hearing is called for, the State must inform the claimant "of any provision for payment of legal fees by the agency." While the rules and regulations under Title 45, Part 205, state that federal financial participation is available for the provision of legal counsel, there is nothing to indicate that it is mandatory that a state make such provisions.

The relief for which plaintiff prays is, in all respects, denied.

It is so ordered.

---

F.2d 757, 762 (5th Cir. 1963), albeit in some circumstances for the survivors of a wage earner.

The Court feels that the rationale regarding reduction of benefits is equally applicable where, as here, the payments being eliminated are not of precisely the same category of Social Security benefits as

those that are ongoing. *Cf.* Velazco v. Minter, 352 F.Supp. 1109, 1116 (D.Mass. 1973), wherein it was stated: "[T]he various provisions and programs of the Social Security Act and of the interrelated [State] provisions and programs are *in pari materia.*"