Mary Angel **GONZALES**, a widow, etc.,
**Plaintiff-Appellant,**

v.

**Raymond G. VOWELL, Commissioner of
Public Welfare for the State of
Texas, Defendant-Appellee.**

No. 73–2368.

United States Court of Appeals,
Fifth Circuit.

March 1, 1974.

Robert M. Helton, Wichita Falls, Tex., for plaintiff-appellant.

John L. Hill, Atty. Gen. of Texas, Robert Gauss, Asst. Atty. Gen., State of Texas, Austin, Tex., for defendant-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

PER CURIAM:

This appeal presents the question whether a state must provide a hearing and appointed counsel to a welfare recipient before reducing welfare benefits to which the recipient is no longer entitled. In the district court, Mary Angel Gonzales sought a judgment that the State of Texas had unconstitutionally deprived her of certain welfare benefits and had denied her appointed counsel at a subsequent hearing on the alleged deprivation. The district court denied the requested relief. We affirm.

Mrs. Gonzales, a widowed mother of four, applied simultaneously for financial aid under the federally-assisted Aid to Families with Dependent Children program (AFDC) and the Federal Old Age, Survivors and Disability Insurance Benefits program (OASDI), shortly after the death of her husband. She began receiving monthly benefits under both of these programs in August 1971, $171.00 in AFDC benefits and $429.00 in OASDI benefits. After a chance conversation with a caseworker for the Texas Department of Public Welfare, she was informed that since the OASDI funds alone represented more than her family's "recognizable needs", she was ineligible for state-administered AFDC benefits. The AFDC benefits were thereafter discontinued without additional notice to Mrs. Gonzales and without a prior hearing. Later, upon application by Mrs. Gonzales, the State Department of Public Welfare held a hearing, but it was entirely devoted to a discussion between the hearing officer and Mrs. Gonzales' attorney, who insisted that he be "appointed" as her counsel. The Department held a second hearing on February 8, 1972, and upheld the termination of AFDC benefits.

Mrs. Gonzales then filed the instant action in the United States District Court for the Northern District of Texas, urging that she had been denied a pre-reduction hearing, contrary to the requirements of Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, and that she had been deprived unconstitutionally of the assistance of appointed counsel. Goldberg held that when welfare benefits are discontinued, only a *pre-termination* hearing on the discontinuance will meet the requirements of procedural due process. Here the district court found, however, that unlike the recipient in Goldberg, Mrs. Gonzales was not "eligible" for AFDC benefits at the time of the reduction, and that accordingly the Goldberg standards were inapplicable.[1] The district court also concluded that since both AFDC and OASDI benefits were Social Security Act payments, the action taken by the State of Texas was merely a *reduction* in the amount of aid received, rather than a *termination* of benefits, and a Goldberg-type hearing was not required. Finally, the district court held that neither Goldberg nor any state or federal regulation requires Texas to furnish and compensate counsel for Mrs. Gonzales in these proceedings.

A substantial portion of the appellant's argument is concerned with the question whether Mrs. Gonzales was "eligible" for the AFDC benefits and whether they were, therefore, a "statutory entitlement" as were the benefits terminated in Goldberg. It is not neces-

---

1. In the view of the district court, Goldberg speaks in terms of providing hearings to *eligible* welfare recipients, those for whom welfare is a matter of "statutory entitlement". Since Mrs. Gonzales was informed at the time of her application that she might not be eligible for AFDC benefits if her OASDI payments were too large, the district court concluded that she was never "eligible" and cannot complain of the denial of a pre-reduction hearing. 361 F.Supp. 1230, 1233–1235.

sary to resolve this issue to affirm the district court, however, since this Court has held that when welfare benefits are reduced rather than discontinued, the *Goldberg* requirements apply only to that limited class of cases in which the effect of reduction closely approximates that of complete termination. Merriweather v. Burson, 5 Cir. 1971, 439 F.2d 1092, 1093 (per curiam).

Such an approach is reasonable in light of *Goldberg's* express intent to provide protection to welfare recipients faced with a possible loss of benefits, lest they be denied the "very means by which to live", while contesting the potential deprivation. The danger to the unprotected welfare recipient in such a case is clear: "Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." 397 U.S. at 264, 90 S.Ct. at 1018–1019, 25 L.Ed.2d at 297. That these dangers confront the welfare recipient whose payments are reduced rather than terminated, is by no means clear; during the same term in which *Goldberg* was decided the Supreme Court indicated that *Goldberg's* requirements are not necessarily applicable to reducee cases. Daniel v. Goliday, 1970, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (per curiam). The test, therefore, that this Court has outlined to invoke the *Goldberg* standards in reduction, as opposed to termination, cases, requires the district court to determine "whether reducees [in the case at bar] were subjected to the potential burdens found in *Goldberg* to require a pre-termination hearing." Merriweather v. Burson, *supra*, 439 F.2d at 1093.[2]

It is impossible to conclude that Mrs. Gonzales meets the *Merriweather* standard. While it requires little understanding of economics to observe that a widowed mother of four will be hard-pressed financially on the $5148 that the OASDI benefits will provide her family annually, her situation is still far different from that of the recipient whose benefits have been discontinued altogether. It is to the plight of the latter that the language of *Goldberg* speaks. Indeed, only the Congress and the Texas legislature can alter the economic realities for Mrs. Gonzales; she as much as admits in her brief that the cancellation of her AFDC benefits was inevitable under the current standards, even had a *Goldberg*-style pre-reduction hearing been afforded. We cannot conclude, then, that one was required.

We are unconvinced that the State of Texas was required to appoint and compensate counsel for Mrs. Gonzales for her post-reduction hearing. The district court correctly concluded that Section 32(1) of Article 695c, Vernon's Texas Revised Civil Statutes Annotated (1969) is precatory as to the provision of funds for legal assistance in welfare hearings. We adopt the findings and conclusions of the district court on this question and also endorse its determination that the HEW regulations cited by the appellant[3] are optional and do not require a state to make provision for the payment of the legal fees of an aggrieved recipient appearing before a state welfare agency.[4]

The judgment is affirmed.

---

2. *Merriweather* construes Daniel v. Goliday as requiring an evidentiary hearing on the weight of the burden on the recipient resulting from a reduction of benefits. Although the district court entered no specific findings on this question, it is clear that its decision was rendered after a full and fair hearing. It is also certain that the reduction of Mrs. Gonzales' benefits to $429 per month does not cause a burden commensurate with termination.

3. 45 C.F.R. §§ 205.10, 220.25 (1969).

4. See 361 F.Supp. at 1235.